UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL WARZEK,

          Plaintiff,

vs.

VALLEY STATE PRISON, et al.,

          Defendants.

**1:20-cv-00027-ADA-GSA-PC**

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS BE GRANTED IN PART, WITH LEAVE TO AMEND**
**(ECF No. 22.)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS**

## I.     BACKGROUND

Plaintiff Michael Warzek is a state prisoner proceeding *pro se* with this civil rights action pursuant to 42 U.S.C. § 1983.  On December 26, 2019, fifteen plaintiffs, including Plaintiff Michael Warzek, filed the Complaint commencing this action against Valley State Prison (VSP), et al., for subjecting them to adverse conditions of confinement in violation of the Eighth Amendment by serving substandard food in Kosher meals at VSP. (ECF No. 2.)

On January 7, 2020, the court issued an order severing the fifteen plaintiffs' claims and opening new cases for individual plaintiffs. (ECF No. 1.)  Each of the fifteen plaintiffs was ordered to file an amended complaint in his own case within thirty days.  (Id.)  On February 4, 2020, Plaintiff Michael Warzek filed a First Amended Complaint in this case.  (ECF No. 4.)

This case now proceeds with the First Amended Complaint against defendants Warden Raythel Fisher, Jr., Officer Paez, and Culinary Staff Members Anguiano, Chapas, Lucero, Marquez, Cruz, and Moosbauer[1] ("Defendants") for violation of RLUIPA, violation of the First Amendment Free Exercise Clause, and unconstitutional conditions of confinement in violation of the Eighth Amendment; against defendants Warden Raythel Fisher, Jr. and Culinary Staff Member Moosbauer for failure to protect plaintiff from harm to his health from the Kosher foods served to him, in violation of the Eighth Amendment; and against defendant Culinary Staff Member Moosbauer for retaliation in violation of the First Amendment.  (ECF No. 4.)[2]

On January 27, 2022, Defendants filed a motion to dismiss this case under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6).  (ECF No. 22.)  On June 9, 2022, Plaintiff filed an opposition to the motion.  (ECF No. 32.)  On June 17, 2022, Defendants filed a reply to the opposition.  (ECF No. 33.)  Defendants' motion is deemed submitted.  Local Rule 230(l).

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at Valley State Prison in Chowchilla, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events at issue in the First Amended Complaint allegedly took place.

Plaintiff's allegations follow:

1.     Rotten, spoiled, and otherwise unfit for human consumption food is being served in the Kosher diets. The meals are regularly served half-cooked/prepared – in particular, meat. When brought to the attention of the Culinary Supervisor Cook (CSC) and CSC II staff, the meals are not replaced.

---

[1] Sued as Moosebaur.

[2] On June 22, 2021, the Court issued an order dismissing all other claims and defendants from this action for Plaintiff's failure to state a claim.  (ECF No. 19.)

Weekly, the Shabbat dinner is served with spoiled meat. The meat is supposed to be vacuum sealed but is served to Plaintiff open and with mold growing on it. When eaten, the meat causes illness, and Plaintiff has suffered sickness from being served these meats by Defendants. Similar sickness is caused by other meats when served uncooked or opened.

The turkey served in lunches is unfit for human consumption. It has been denatured by having bone ground into it. The sharp and relatively large bone shards cause damage to Plaintiff's teeth and lacerations to Plaintiff's mouth and throat.

The Kosher meal stock is delivered in a manner that causes the frozen food to spoil. It is taken from the refrigerated delivery truck and left unrefrigerated in the open sun and out in the elements at the docking area for entire shifts. Staff at the warehouse/central kitchen and culinary staff do not want to inventory the meals upon arrival. After approximately ten hours, the items are finally inventoried and re-frozen. Upon need of the meals, they are again left out in the elements and sun as they are transferred, where they spoil further and are refrigerated again for serving on the following day.

The internal components of the meals are open, spoiled, and otherwise contaminated. Items that are sealed, such as applesauce, cream cheese, chips, bagels, and fruit cups, are either opened by bacterial growth or by mechanical means such as crushing and then allowed to fester. When revealed to CSC staff by Plaintiff, no correction follows.

Items in the Kosher meals are stolen by inmate culinary workers. When this problem is taken directly to CSC staff by Plaintiff, Plaintiff is told, "Too bad," and left without the stolen parts of the meal. In addition, when stolen items are reported to custody staff, threats of rules violations reports being issued against Plaintiff is used as a tool of reprisal and threat, to prevent further speech on the issue. Threats of violence by inmate workers against Plaintiff is also used, and correctional and custodial staff refuse to protect Plaintiff from the threats of violence. Culinary workers intentionally wear their serving gloves to the restroom and touch their "dirty dick" with their hands prior to serving the meals. CSC and custodial staff refuse to address the issue.

///

2. Food is transported, opened, and cooked in shared ovens and carts that are used for non-Kosher foods. Kosher foods must be double-sealed or they are contaminated. However, daily the seals on the food are breached, either by failures during a transportation process, such as crushing and popping open of the meals, or by intentional actions of persons stealing the contents of meals. These meals are served to Plaintiff and rendered non-Kosher. These meals are cooked in ovens used to cook non-Kosher food, even at the same time, rendering the food non-Kosher.

The sole Jewish worker, when objecting to this practice, is told by his supervisor, defendant Moosebaur, to "get into the oven" while it is still hot. Defendant Moosebaur openly states that his grandfather was a German SS, wishing that all the Jews had been killed in the Holocaust.

Then the food is transported in shared carts and stored in the same shared carts with the meals open, served at the same time and placed with the non-Kosher food. The Kosher-only oven was redirected for use for regular meals, so all meals are cooked together and the Kosher oven has not been replaced.

3. The culinary workers are not trained in the procedures mandated by the California Retail Food Code, nor by a Rabbi (necessary to serve Kosher food). The issue of training has been raised repeatedly and ignored by VSP administration as well as by the CSC staff (Defendants). The procedures for Kosher foods change every few days, perhaps not "officially," but in effect. Actual procedures are ignored and cause Plaintiff to be served non-Kosher and contaminated food.

4. Kosher meals are served in communal areas, wherein the tables are unclean both ritually and literally. The same dirty rags are used to clean the non-Kosher food and then used to clean the Kosher Diet Program (KDP) tables (when they exist), leaving chunks of non-Kosher meals smeared across the tables daily. The promised Kosher utensils are not provided and Plaintiff is required to cook many items because they are served uncooked/unprepared, but Plaintiff is not permitted by correctional staff and VSP administration to return the item to his housing unit to prepare it. The separation of Glatt (meat) and Dairy requires the use of separate

utensils, and the separation of Passover Kosher from annual/regular Kosher meals requires separate utensils. Cleaning of plastic utensils is unfeasible and therefore disposable utensils are supposed to be issued daily by Defendants but are not, further creating a barrier to the observance of Kosher by Plaintiff. On fasting days when Plaintiff receives his meals for the conclusion of the fast (three meals issued at one time), Plaintiff is instructed by both correctional and CSC staff to eat all the meals during the fasting hours or discard the meals. In this way, Plaintiff is not permitted to observe fasting holidays.

5.      When foods are rendered non-Kosher, CSC staff refuse to replace the meal. When the meal is uncooked/unprepared/frozen, CSC staff refuse to replace the meal. In both scenarios, custodial staff refuses to allow a call for a supervisor by use of threats and intimidation. Both hot dinner and breakfast trays are served frozen. Items that are not to be frozen (refrigerate-only items such as mayonnaise or cream cheese, other fluid items such as applesauce or jelly that when frozen explode in the meals and cannot be eaten, like a soda placed into a freezer) are served daily but are inedible and not replaced, leaving Plaintiff with less of a meal than is reported on the menu.

While the hexure (Kosher certification) of the meals is considered Kosher by some, it does not meet the full standards of Orthodox Kosher. The meals are delivered with tape that reads, "If tape is removed, Kosher status may be voided." This tape is disturbed on at least six (6) cases of meals per pallet, the contents of which are damaged and opened at the institution warehouse. Main kitchen staff refuse to fix the issue despite repeated efforts by Plaintiff to fix the problem. Plaintiff is then served the non-Kosher meals by culinary Defendants.

6.      The served foods do not match the approved menu foods, neither by name nor quantity. Three-ounce bagels have been permanently replaced by 2-ounce or 2.5-ounce bagels. Replacements are the usual occurrence, and the very limited variety of foods is worsened when the few items are replaced with duplicates from the previous day. For example, on bagel day the bagels are stolen by culinary staff (inmates, despite efforts by Plaintiff to have the correct meal served) and replaced with the peanut butter and jelly meal that was saved from the previous day. CSC staff allow this practice to reward their workers as an "underground regulation." The bagels

and other such items like cookies are taken back to the facility yard and sold. Correctional staff allow the inmate workers to take these items back to the housing units and facility. These Defendants are responsible for Plaintiff not receiving the nutrition he should. The same is true for dinner meals at the main kitchen. Main kitchen workers consume the more palatable meals and replace them with the open and otherwise inedible meals, i.e., if the chili meal is dropped onto the floor on Monday and spilled, it is used to replace a Wednesday meal (chicken patty) after being stowed away for two days in the main kitchen. In this way the meals are otherwise contaminated. The meals that are served are calorie rich and nutrient poor. The meals are basically bread, sugar, and spoiled meat.

7.      The foods served are past their expiration date and/or best-by date. All foods served in this way are poor, with mold growing on them, stale, with opened bread, exploded, waxy, etc. The foods have been taken directly to the supervisory staff – CSC, CSCII, Food Manager, Food Administrator, etc. – and in response the Plaintiff suffered retaliation. The future batches of meals no longer had dates on all the products and slowly the remaining products have had their dates removed from them. The labeling from ABC Ventures had the expiration dates removed (some of the dates were more than two (2) years past), and lot codes were issued. The food served to Plaintiff by Defendants is still bad. The individual food items do not often have a Kosher certification at all.

The meals in question are neither wholesome nor nutritious. Nutrition is absent and only empty calories remain. The fruits and vegetables that are served are non-Kosher. They are cracked, punctured, handled with dirty hands that were not washed after using the restroom, have rotten spots growing on them, are recycled after being discarded, or otherwise inedible. Plaintiff is served this food by Defendants.

8.      The Kosher Diet Program (KDP) is intended to allow for Kosher-observant inmates like Plaintiff to eat their meals separate from non-Kosher meals. This is an important requirement in Kashrus. The issues have been raised with correction staff and sergeants several times and as a result, Plaintiff suffered retaliation from Defendants repeatedly and the issue is not resolved. Procedures were changed to include others in the Kosher diet release to include

diabetics, workers, students, and anyone who wishes to sneak out of the buildings during the release period. Even the issue of inmates sneaking out has been raised, to no avail. Defendants refuse to address the problem and there is further retaliation against Plaintiff, such as being forced to eat in contaminated areas with non-Koshers, and the forced discarding of Kosher meals and items.

Prayers, according to Orthodox law, require that persons of different faith be away while they are spoken. Plaintiff is forced to be seated with the unfaithful, thus preventing him from saying the Holy and Sacred Prayers prior to meals. Meanwhile, the insurgents talk while eating, spitting out their food onto KDP participants' meals, rendering the meals non-Kosher. Regularly, Plaintiff as a KDP is required to eat with Pagan and/or "Skinhead/White Power" individuals who intentionally cause difficulties for Plaintiff. Plaintiff has raised this issue with correctional and culinary staff (Defendants), to no avail, leaving Plaintiff at risk from the hateful anti-Semitic persons at meals.

9.      Plaintiff (KDP) is served whole meals and portions of regular non-Kosher meals in place of Kosher meals. Items include non-Kosher bread, etc. This is done by Defendants culinary staff and is done in particular when items from the Kosher meals are missing, as the result of the theft of those items by inmate workers, permitted by culinary staff (Defendants). So much of the Kosher food is stolen from the KDP that only non-Kosher replacements are available for Plaintiff. When replacements from the main kitchen are requested by Plaintiff, these requests are denied by both culinary staff and custodial staff (Defendants). Recently the salads that were the most nutritious parts of the Kosher diets have had the most nutritious items removed in retaliation by culinary staff for filing inmate grievances and CDCR 22's. Replacing the salad is a ball of shredded dry cabbage and two dirty radishes.

10.      After multiple pleas and appeals, Plaintiff has been given repeated excuses for the open, rotten, spoiled, uncooked, frozen, spilled, non-nutritious food, including regular blame of the vendor (ABC Ventures). Yet Defendants continue to order from the same vendor for years. Plaintiff has filed appeals yet continues to face roadblocks such as cancellations (VSP-19-01146,

VSP-19-01285, TLR 1908537 and others). For three years, Plaintiff has been trying to resolve the issues with named Defendants culinary staff.

Requests for another supplier of Kosher foods were denied. Culinary and institutional, Statewide Religious Review Committee (SRRC), and policy staff all refused to address all these issues. Appeals to exchange rotten food were denied, appeals to have another vendor were denied, and appeals to have a back-up plan were denied. The KDP, including Plaintiff, have all collectively attempted to resolve every issue.

11.     Plaintiff is an inmate. Plaintiff suffered because of Items #1-10 (written above) and at all times was housed at Valley State Prison in the custody of the California Department of Corrections and Rehabilitation and participating in the Kosher Diet Program (KDP) for reason of sincerely-held belief. Plaintiff is a Messianic Jew.

Plaintiff believes that the law of the Bible is an instruction from our Father and Creator, and that he has no choice but to adhere to the instruction given by his loving Father. The Teachings have been passed down from generation to generation starting with Moshe (Moses), whereupon they were received from God. The problems faced by Plaintiff have been caused by Defendants, each of them every day, and are accounted for from 07/30/18 to 12/20/19. The available Rabbi, P. Gordon, was made aware of the problems with the KDP by Plaintiff. The Rabbi confirmed the problems and agreed to investigate. Upon his investigation, the Rabbi informed Plaintiff that he was raising the issues with the Religious Review Committee (RRC) but there has been no solution. The issues with staff were also raised, then forwarded to the Community Resource Manager (CRM), also to no avail.

**1)     Claim 1; U.S. Constitution, 1st Amendment:**

**a)     Free Exercise of Religion:**

Plaintiff is daily denied the ability to observe Kosher. At the time of filing, this restriction from 07/30/18 totaled approximately 515 days and more than 1,030 meals/violations. Defendants have each failed to provide Kosher meals as required by the U.S. Constitution, existing decisional case law, and Jewish Kosher Law. There is no alternative to eating. A person must eat to survive,

and a Jew must eat only Kosher meals. No alternative readily exists for Plaintiff to receive daily Kosher meals.

CDCR and VSP [not defendants] (and therefore Raythel Fisher) are responsible for providing the religious needs of Plaintiff, and they have failed in this duty. Statewide Religious Review Committee (SRRC) members (Does #1, 2, and 3) [not defendants] are responsible for the creation and implementation of statewide programs to meet these needs and to provide healthy meals appropriate to meet both the nutritional and religious needs of Plaintiff, yet after multiple problems, chose year after year to retain the same vendor that had been blamed for the problems of quality and contents. Knight [not a defendant], Thornton [not a defendant], and Fisher each personally reviewed the administrative appeals and made intentional decisions to either deny or ignore the problems as they were reported to them personally and directly by grievances. Inmate Anderson [not a defendant] personally took pride in his actions to intentionally contaminate and render Plaintiff's meals unKosher by handling his penis and wiping the external and internal components of the meals with the sweat from his genitalia, likewise with Doe #4 [not a defendant].

Correctional officers contributed to this denial of the right to freely exercise Plaintiff's religion in a reasonable manner. C/O Paez personally stood at the serving window and actively prevented Plaintiff from seeking replacement foods on a regular basis, using threats and retaliation to quell calls for change in active coordination with culinary staff member Anguiano.

Correctional Officer Keene [not a defendant] maliciously forced KDP inmates such as Plaintiff to mix with the non-Kosher participants while stating, "So they think they're fu**ing special" and "I'm tired of these fu**ing Jews sitting all over the place."

Correctional Officer Avila-Gonzales [not a defendant] repeatedly confiscated the Yarmulkes of observant Jews in the dining hall and rummaged through Kosher meals contaminating them with her dirty gloves used to search shoes and other objects. These issues were brought to Sergeants Clements and Santoya [not defendants] in repeated face-to-face conversations whereupon Sergeant Clements publicly intimidated and embarrassed KDP inmates
///

and then used retaliation, while Santoya repeatedly refused to correct the actions of his subordinates.

Culinary staff Chapas, Lucero, Marquez, and especially Anguiano were the frontline refusers to replace spoiled and contaminated meals (and meals missing components) that were served to Plaintiff. While the above defendants were the supervisors of the inmate workers, they allowed the inmate workers to knowingly grossly contaminate the Kosher meals even after being made aware of the issue by Plaintiff. Defendant Cruz refused to send replacements (meals) and allowed for the theft of items inside the Kosher meals. Hayman [not a defendant] and Defendant Moosebaur repeatedly responded to the KDP and did not resolve issues, neither in person nor in response to written inquiries. Moosebaur in particular refused to fix issues and even claims to have eaten the rotten meat and instructed Gann to eat it while watching. Mohktar [not a defendant] received the CDCR 22's documenting the issues and in response retaliated by removing items from the KDP's salads. Hernandez [not a defendant] personally conducted interviews with Plaintiff and other KDP, answered CDCR 22's and CDCR-602's, personally choosing not to correct any of the issues presented in the documents and in the interviews. Hernandez [not a defendant] chose not to change the food in conspiracy with other culinary and administrative staff, used the same vendor and did not investigate the practices leading to issues.

**b)**    **Retaliation for:**

**Exercise of Religion, Free Speech, and Conspiracy**

Plaintiff suffered retaliation for his exercise of religion, by insisting that his meals be kept Kosher and the subsequent complaints, grievances, and possibly this complaint in the near future. The retaliatory actions were done by state actors against Plaintiff because of the exercise of protected actions under the U.S. Constitution's First Amendment and were done for the purpose and did chill the exercise of that protected conduct. Defendants' actions did not serve any legitimate penological goal or interest. Several of the actions in #1-10 were done in concert with other actors (Defendants) who were not directly present at that time, but in a conspiracy to retaliate. Inmate Anderson [not a defendant], upon being confronted with his contamination of

///

the meals by use of his genitalia, retaliated by encouraging others to do the same (Doe #4) [not a defendant].

Officer Keene [not a defendant], in response to Plaintiff reporting her (Keene's) failure to follow procedure to Sergeant Clements [not a defendant], responded by intentionally disturbing Plaintiff's prayers and micro-managing the eating arrangement to ensure that KDP inmates were forced to eat with the non-KDP in violation of the procedure. This action in combination with her demeaning language about Jews shows her prejudice and intent. She interfered with the religious practice of Plaintiff and retaliated. Officer and Defendant Paez, in response to attempts to have spoiled meals exchanged at the dining hall, used threats of rules violation reports, retaliatory searches (that factually occurred), and threats to have Plaintiff removed from KDP. When Plaintiff raised the issue with Sergeant Clements, Clements intimidated KDP inmates publicly as a group and made Plaintiff and other KDPs discard their meals that had been prepared for the conclusion of the fast (for the following day). Santoya [not a defendant], in response to Plaintiff's attempt to resolve the various Kosher meal issues, denied Plaintiff the ability to participate in the Inmate Advisory Counsel, instructed housing unit officers to conduct retaliatory searches, used adverse changes to the Kosher Meal policies to hinder observance, used his position to restrict corrective action, and instructed his subordinates to continue the disruptive behavior.

Mohktar [not a defendant], in response to receiving Plaintiff's complaints via CDCR 22 forms, decided to have the contents of the Kosher salads reduced and made it known that this action was specifically in retaliation via the KDPs King and Thomas who at that time worked for him. This was done with the intention that it would curb further reports of Kosher program failures.

In retaliation for repeated complaints and grievances, defendant Moosebaur (a vocally proud Neo-Nazi) told his workers (including inmates such as Israel Garcia-Trevino #AY-4957 and other "line backers") that they no longer needed to wear gloves or hair nets while working with the Kosher food. In addition, the meals that should have been used as replacements for

spoiled meals were given to his favorite workers instead of being used as replacements, causing Plaintiff to be forced to either eat spoiled meals or not to eat.

The training by Moosebaur extended to Defendant Anguiano and subsequently to Anguiano's 3rd watch inmate workers. When Plaintiff tried to have spoiled meat replaced, Defendant Anguiano accused Plaintiff and other KDP inmates of fraud, requiring that every Saturday night meal be opened in front of him – yet when Plaintiff was (and is) served rotten meat, Defendant Anguiano still refused to replace the meat. This action was public and demeaned and deterred further complaints and other such speech by Plaintiff, effectively chilling the exercise of this protected conduct. The practice of Saturday public meal opening continues.

**2)** **Claim 2: U.S. Constitution, 8th Amendment**

    **a)** **Nutritionally Deficient Diet (Kosher Diet)**

Inmates are not required to choose between two rights they are entitled to exercise, i.e. choosing to observe Plaintiff's faith (Kosher) or eating nutritionally adequate meals. Plaintiff has the absolute right to both, and defendants have a duty to provide the means. Currently, Plaintiff is suffering from a nutritionally deficient diet.

Food is a basic necessity of life and must be nutritionally adequate. The continuous deprivation of nutritious food for two years is not a short-term dilemma for the duration of an emergency. Each of the Defendants has an absolute duty to provide Plaintiff with nutritious diets that also comply with his religious needs. Plaintiff has instead been given a long-term diet consisting of high carbohydrate, high calorie food without adequate vitamins, minerals, healthy oils, etc., without supplementation.

Defendants have each played a role in the food chain. From the development of an inadequate menu based solely upon the number of calories and without consideration of nutrition, the use of highly processed food (reduces the nutritional value of otherwise healthy similarly named items), and nutritionally deficient substitutions (i.e., food listed as chili lost its cheese replaced with water, beans were reduced to under 10 beans and replaced with water, diced tomatoes were replaced with a highly processed tomato paste mixed with a large volume of water devoid of nutrition.)

/// 
///

### b) Sanitation of meals

All meals served during the times mentioned herein were both ritually contaminated, rendering them non-Kosher, and literally contaminated making them unsanitary. From the serving environment to the intentional contamination by the restroom (i.e., feces, semen, urine, etc.) and the genital sweat from the touching of the genitalia by inmate workers under the supervision of Defendants Culinary Staff, Correctional Officers, Anderson [not an inmate], Doe #4 [not a defendant], and VSP Administration [not a defendant]. The meals are served on unclean tables, both literally and ritually. Dirty water and rags are used. The actual policy is to use one time rags (clean) and a dedicated cleaner used only for the Kosher Tables. This procedure is not followed by inmate workers, nor is it enforced by the culinary staff or custodial staff. When raised to the aforementioned defendants, retaliation ensues in the form of further barriers to religious expression.

The aforementioned conditions are dangerous to the health of Plaintiff. In particular when the "restroom type" of contamination is exposed to the food and the eating areas are made dirty with rags and water (used to clean the floor) are the cleaning tools for the Kosher meals and areas. Illness has occurred to the Plaintiff, in particular sickness of the digestive tract caused by the unsanitary conditions of the serving and eating area of Plaintiff.

Members of the SRRC [not defendants] have intentionally reduced the quality of the food for the purpose of deterring inmates such as Plaintiff from participation in the KDP as is required by Plaintiff's religion. This is a form of punishment and discrimination based upon Plaintiff's religion and belief, used to try and force Plaintiff to quit the KDP and give up on religious tenets as required by God of Plaintiff.

### c) Mental Health

The failures of the KDP have caused great anguish and mental pain to Plaintiff. To discover that Plaintiff's meals had been repeatedly contaminated by sweaty anus residue and semen was shocking and unfathomable, while Plaintiff took on the burden of keeping Kosher,

suffering nutritional deficits, trying to follow tenets of his faith and the laws of God. The incredible malpractice of Defendants in their respective roles (from either directly conducting the acts or after being made aware and failing to remedy the situation) and their failures to fulfill the daily dietary needs, and by ignoring or providing boilerplate responses to grievances and form 22's to Plaintiff and other KDP inmates, have all contributed to the great depression, anguish, and physical illnesses suffered by Plaintiff.

       **d)**      **The Conditions of Confinement** are Grossly Disproportionate to the Crime As outlined above, the treatment of Plaintiff is extremely poor, unconstitutional, and egregious. No one in these United States should ever be subjected to the treatment suffered by Plaintiff. Plaintiff has suffered as described, emotionally, spiritually, and physically as a result of Defendants as described in #1-10. The conditions of confinement do not further any penological goal. The conditions were raised repeatedly by Plaintiff and KDP and were deliberately ignored. These conditions affected the daily life (and continue to do so) of Plaintiff. Plaintiff suffered anxiety, depression, damaged teeth, poor nutrition, physical illness (vomiting, diarrhea, nausea, cramps, etc.). The circumstances were permitted to continue as a coordinated effort by the Defendants in conspiracy to ignore the problems. Defendants actively conspired to allow the conditions to continue. The discriminatory animus shown by the Defendants (with emphasis by Anderson [not a defendant] and Moosebaur) was egregious and shows example of the daily circumstances of Plaintiff's life trying to overcome the prejudice. The actions were meant to deprive Plaintiff of his equal privileges and right to nutritious food served in a sanitary manner and the ability to observe his necessary religious tenets. The motives are clear by the actions and statement of Defendants, and Defendants' actions have resulted in injury as described by Plaintiff.

      Our American society does not tolerate treatment such as the physical contamination of food as has occurred to Plaintiff. The acts of Defendants are degrading to Plaintiff and attack his dignity without cause.

**3)**      **Claim 3: U.S. Constitution 14th Amendment:**

      **a)**      **Significant Hardship:**

Daily hunger is a significant hardship, as with nutritional deficiency. When Plaintiff cannot eat because of the food being contaminated or spoiled, it causes this hardship. The times Plaintiff does eat are essentially ineffective because the food is nutritionally deficient, loaded with unhealthy carbs and calorie dumps made from highly processed foods known to cause cancer.

Having to file this suit, spending over $450.00 collecting data and filing grievances, form 22's, arguing with Defendants, risking and suffering retaliation is a hardship. Retaliatory searches caused Plaintiff to suffer a lack of safety in his assigned housing. VSP is a dormitory setting (crowded), and when a retaliatory search is conducted, allowable property is seized from Plaintiff's cell-mates with the intent and effect of causing strife, anger, and the very real potential threat of violence against Plaintiff. Plaintiff lives in stress, anxiety, and depression, suffering from the loss of sleep and fear due to Defendants.

To supplement the diet, Plaintiff must order additional foods or trade for them as ordered from the packages or canteen. This additional financial burden and hardship is placed on Plaintiff and his family. By trying to observe Kosher laws and exercise his right of free expression, Plaintiff must endure this hardship. These rights are protected by the U.S. Constitution and cannot be taken away, so fundamental that they are inseparable no matter what process is used.

**b)** **Discrimination:**

Plaintiff has suffered discrimination. Members of the SRRC [not defendants] made decisions with intent that denied Plaintiff nutrition and sanitation in his meals while using methods at their disposal to discourage the lawful participation in the Kosher Diet Program as guaranteed by law. The SRRC [not a defendant] has deliberately chosen to order food from ABC Ventures, a known problem vendor that CDCR [not a defendant], VSP [not a defendant], and the Food Manager have blamed for the known problematic food. CDCR [not a defendant], VSP [not a defendant], and Raythel Fisher, Jr. created policies that deny KDP such as Plaintiff the ability to eat Kosher or even sanitary food. Those who are required to eat Kosher by their faith, Plaintiff, suffer because of these policies. Culinary staff fail to supervise their workers, and custodial staff refuse to admonish those found to contaminate food and actively conspire with culinary Staff

(Defendants), both to force Plaintiff to accept spoiled/contaminated food. RVR threats include refusal to obey orders, threats of inciting a riot, hunger strike initiation, and assault on staff. Muslim inmates do not suffer such prejudice and have no problems with their RMA meals.

Defendant Raythel Fisher, Jr., only allows access to the Rabbi one day a week for Plaintiff. Plaintiff has raised the issues with the Rabbi, who investigated and decided that there were legitimate problems with the KDP and forwarded those issues to the RRC [not a defendant], Food Manager [not a defendant], CRM [not a defendant], and Warden (Raythel Fisher, Jr.). Defendant Fisher has disallowed Shabbat (Saturday) services and refuses to accommodate Shabbat work prohibition for Plaintiff, but permits the Muslim holidays to be observed, unlike the majority of holidays required by Jewish law. Likewise accommodations are readily made for the Christian services, whereas the two days of Rabbi access was reduced to one day. Inmates Anderson and Doe #4 [not defendants] actively hate against the Plaintiff by contaminating the Kosher food (Kosher is inherently a Jewish observation as it was delivered to the Jewish Nation by Moshe/Moses at Mount Sinai) and disrupting Kosher observance. Anderson [not a defendant] uses words to describe Plaintiff such as "Fake a** Mother Fu**ers," showing his racism, hate, and discriminatory intent that he acts upon.

Officers Keene and Avila-Gonzales [not defendants] and Sergeants Clements and Santoya [not defendants] display their prejudice with their words and actions. They have actively caused the inability to observe Plaintiff's faith. Keene has disrupted the KDP and vocally displayed her (Keene's) motivations and reasons that are not related to any legitimate penological interest. Avila-Gonzales [not a defendant] targets Plaintiff for his faith to harass him and confiscate his head covering (Yarmulke) that is explicitly permitted. When the staff issues are raised to their supervisors in face-to-face interactions Clements and Santoya refuse to act. Clements has publicly embarrassed KDP inmates with intimidation.

Defendant Moosebaur brags about how his family murdered the Jewish population in Germany. Moosebaur expresses his desire to "Kill all the Jews" and uses his position to intentionally disrupt the Kosher Diet Program by having the meals served to Plaintiff go rotten out in the elements, allowing his workers (with Defendant Cruz) to open and contaminate the

meals while stealing the meals' contents (meals served to Plaintiff). Moosebaur tried to force Plaintiff and KDP to eat rotten food while he watched and laughed. Moosebaur is prejudiced and discriminatory. Defendant Anguiano likewise has taken an active role in taking away the ability of Plaintiff to eat suitable food. He was trained by Moosebaur to deny requests for replacement meals even when they are rotten, spoiled, spilled, open, contaminated, or otherwise unfit for consumption (or rendered non-Kosher). The actions of Defendants are discriminatory and resulted in the denial of protected conduct. Defendants acted in concert with one another to deter by force (Paez and Anguiano), with threats of retaliation.

Mohktar [not a defendant] shows his discriminatory animus by intentionally reducing the nutritional content of the KDP and Plaintiff's food (the on-site prepared salads, by removing vegetables, etc.) in response to attempts to observe the Plaintiff's religious tenets. In addition, when the need for fasting arrives due to a mandated religious fast, Mohktar and Defendant Fisher disrupt this process despite approval from Sacramento (CDCR Headquarters) and the federal RTM as referenced by the D.O.M.

**4)    RLUIPA:**

a)    The aforementioned restrictions placed upon Plaintiff are barriers placed by individual decisions made by Defendants. The decisions do not serve any legitimate purpose. Allowing the contamination by the intentional spoiling of food, the prejudice and retaliation actions have no basis in legitimacy.

b)    Defendants have placed a substantial burden on Plaintiff's ability to exercise his faith and follow the tenets of his religion. There is no compelling reason to do so, and it is not in the furtherance of a government interest. It is not the "least restrictive" manner to obtain any goal other than to hate on the faithful, such as Plaintiff.

c)    Keeping Kosher (observing Kashrus) is a well-established "Central Tenet" of Plaintiff's faith. It is a mandatory requirement.

d)    Prison officials have been made well aware of the inability of Plaintiff to keep Kosher and have taken no corrective action. Defendants do not care, except to harm Plaintiff. Defendants disregard the complaints of Plaintiff except to retaliate. When Plaintiff's food is

served rotten, he does not eat, and when the food is contaminated, it is only rarely exchanged. Plaintiff often does not eat, or only eats portions that are not contaminated. Plaintiff is always improperly fed. When fed, he is served nutritionally deficient food on a regular basis and is subject to discriminatory treatment by Defendants, both inmates and staff (culinary/custody).

e)      Plaintiff has suffered emotionally, physically, and spiritually. The effect that Defendants' actions have had on Plaintiff are acute and lasting.

f)      Plaintiff has a sincerely held belief that requires him to eat only Kosher. Plaintiff's belief is Messianic Judaism requiring Kosher.

**5)      State Tort Claims**

a)      This court has jurisdiction over the state tort claims due to supplemental jurisdiction over the issues presented in the complaint.

b)      There is no 11th Amendment immunity because Plaintiff is a citizen of the State of California. Further, any immunity that may have existed is forfeited under the California Tort Claims Act (CTCA) since Plaintiff filed under the act and filed this complaint in compliance with CTCA and was instructed to file this complaint by the Government Claims Board.

c)      Defendants are sued jointly and severally for all state tort claims, in both their personal and professional manners.

d)      CCR 15 § 3054(a)(b)

Reasonable efforts to accommodate Plaintiff should have been made, but were not made, and instead efforts were made to deter Plaintiff from exercising his rights. Further religious awareness training was either not conducted or conducted only on paper. The staff regularly state that they are completely unaware of Jewish traditions and holidays. In fact, Plaintiff has been accused of inventing holidays and has been disrespected for observing religious tenets such as donning tzitzit, tefillin, and keeping Kosher.

CCR 15 § 3054.2 (d-f) (g[1])

There is a requirement to adhere to KDP menus that has been ignored, and when the issue has been raised, culinary staff reprisal in the form of retaliation is the default response, or threats of force or retaliation. One of the KDP participants was accused of assaulting Officer Keene after

speaking to her at a distance while limping with his walker, and he subsequently fell when he flinched as she made a violent gesture towards him (assault).

Kosher Passover foods are to be provided, but due to contamination the foods provided were not Kosher, nor Kosher for Passover. Appropriate training is to be done with "all workers, custody and food service employees . . . supervisors, ordering, preparation, serving KDP." There has never been training for the inmate workers since the recording of this complaint. Custody has not received training, or it has only been a paper training, i.e., they lock down the program, go to the gymnasium and literally eat donuts, tell jokes, and sign a paper saying they were trained.  The food service employees admitted they were untrained except by an annual verbal instruction from the Rabbi they had forgotten. The supervisory do not supervise, the ordering staff order non-nutritious food that is rendered non-Kosher, the preparation staff prepare non-Kosher food, the serving inmates handle their genitalia and refuse to wash their hands after using the restroom or change their gloves, and then handle the Kosher food, including fruits and vegetables that are often unwrapped. The review, procurement, storage, and distribution is greatly flawed. The foods are opened, stolen from, allowed to rot and fester, and otherwise contaminated.

CCR 15 § 3050(a)

A wholesome, nutritionally balanced diet is not provided.

CCR 15 § 3052(a)(e)

The food is to be handled in accordance with the Health and Safety Code of California (H&SC) § 113945 through § 114259.4 of the California Retail Food Code (CFC). The food is not, the sanitation is absent, gloves are not changed, hands are not washed after using the restroom, the trays are dirty, the tables are unclean, and vectors exist (pests and vermin).

Workers are not trained nor expected to follow sanitation standards of the CFC. The workers do not follow those standards. Workers are not permitted to serve food until instructed in these standards and are required by administrative law to follow them, yet they do serve food, in violation.

CCR Title 3, Div. 2, Sub. 1, Article 2 § 901.1

Condemnation and Retention of Product: The packaging of the Kosher foods is disturbed

to a great extent. Ripped open, cut open, bacteria and mold growing in what is supposed to be

///

vacuum sealed products. In part, these things are to be retained and not distributed. However, they are instead distributed. The vacuum sealed meats in particular and the pastries.

CCR Title 3, Div 2, Chapter 4, Sub 2, Article 45 Sec 1180.40(b)

Retaining and Condemning Products: Condemned products shall be denatured so as to render it {unfit} for human or pet food.  The items of food served to the plaintiff is to be denatured and not used for neither human or even pet food.  Plaintiff is served this food daily.

CCR Title 3, Div. 2, Chapter 4, Sub. 2, Article 45 §1180.43(b)(2)(D)

Meat inedible by humans – Identification: To identify food that is inedible to humans, one factor that is definite is "coarsely ground hard bone incorporated with the meat." The turkey in the lunches served has coarsely ground hard bone incorporated into it. This bone has caused broken teeth and lacerations to the mouth and throat. This issue has been raised with Defendants several times by the Plaintiff, but Plaintiff has been ignored. This food when served presents an immediate danger when consumed. (Note also an 8th Amendment violation as conditions that failed to meet public health standards as in this section, 5d.)

California Civil Code §52.1(b)

The lack of nutrition, harm from dangerous foods and subsequent broken teeth and sickness, retaliatory actions, threats of force and violence, allow for the damages in the amount of $25,000 per incident. While exercising a protected right, Plaintiff suffered at the hands of Defendants as outlined in the complaint.

**a)      Tortious Actions of Defendants**

As outlined, the intentional tortious actions of Defendants have caused harm to Plaintiff and as such, Plaintiff is entitled to compensation and damages.

As relief, Plaintiff requests monetary damages, including punitive damages, declaratory relief, and injunctive relief.

**III.      PLAINTIFF'S CLAIMS – LEGAL STANDARDS**

**A.    RLUIPA**

Prisoners' religious freedoms are protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). For a RLUIPA claim, the plaintiff-prisoner must show that the government has imposed a substantial burden on his religious exercise. A "'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise.'" San Jose Christian College v. Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004).

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, Sossamon v. Texas, 563 U.S. 277, 279, 131 S.Ct. 1651, 1655 (2011), and RLUIPA does not contemplate liability of government employees in their individual capacity.  Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for declaratory or injunctive relief against defendants acting within their official capacities.

**B.    42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also

Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)); "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### 1.   **First Amendment Right to Free Exercise of Religion**

A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of his/her religion. Vaughn v. Wegman, No. 115CV01902LJOJLTPC, 2019 WL 426142, at *4 (E.D. Cal. Feb. 4, 2019), report and recommendation adopted, No. 115CV01902LJOJLTPC, 2019 WL 10302261 (E.D. Cal. Mar. 12, 2019), aff'd, 804 F. App'x 796 (9th Cir. 2020) (citing Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) citing Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987), aff'd sub nom. Hernandez v. C.I.R., 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on

an adherent to modify his behavior and to violate his beliefs." Id. (citing Ohno v. Yasuma, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). "To ensure that courts afford appropriate deference to prison officials, . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). A prison regulation may therefore impinge upon an inmate's right to exercise his religion if the regulation is "reasonably related to legitimate penological interests." Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citations omitted). Thus, prisons may lawfully restrict religious activities for security purposes and other legitimate penological reasons. Turner v. Safley, 482 U.S. 78, 89–90 (1987); Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). Furthermore, the Supreme Court has held that generally-applicable laws that incidentally burden a particular religion's practices do not violate the First Amendment. Employment Div. v. Smith, 494 U.S. 872, 878 (1990).

*De minimis* or minor burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. See e.g., Rapier v. Harris, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

## 2.   Adverse Conditions of Confinement – Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official

deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

The state is obligated to provide "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it,'" and "the state health code, while not establishing 'constitutional minima,' is relevant in making a finding regarding the constitutionality of existing conditions." Jackson v. Walker, 2009 WL 1743639, at *8 (E.D. Cal. 2009) (citing Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997)); also see Foster v. Runnels, 554 F.3d 807, 812-813 (9th Cir. 2009); Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986) (prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety").

However, the Eighth Amendment does not require that the food provided to Plaintiff be tasty and the court does not read Ninth Circuit precedent to require jail officials to provide food that is optimally nutritious. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing.")

"The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id. "The occasional presence of a rodent is insufficient to establish the objective component of an Eighth Amendment claim, which requires that a deprivation be sufficiently serious," Jackson, 2009 WL 1743639 at *8.

However, "a lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. Cnty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995); see also Johnson, 217 F.3d at 731-32; Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985).

### 3.   Failure to Protect from Unsanitary Food – Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan, 465 F.3d at 1045. Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted). "Preventing disease and protecting the health of inmates are legitimate penological goals." McClure v. Tucker, 276 Fed. Appx. 574, 575 (9th Cir. 2008). Robles v. Coughlin, 725 F.2d 12, 15 (2nd Cir. 1983) (per curiam) (The Eighth Amendment requires prisoners to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.").

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Id. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate

health or safety." Id. at 837; Anderson, 45 F.3d at 1313. To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

### 4.    Retaliation – First Amendment

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

### 5.    Appeals Process – Due Process – Fourteenth Amendment

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "[A prison] grievance procedure is a procedural right

only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

///

Actions in reviewing prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

### 6.   Equal Protection -- Fourteenth Amendment

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,"'" (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2011), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553

U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).  The United States Supreme Court has also recognized equal protection claims brought by plaintiffs as a "class of one," where plaintiffs allege that they have been treated differently from others similarly situated and without rational basis.  Gifford v. Hornbrook Fire Prot. Dist., No. 2:16-CV-0596-JAM-DMC, 2021 WL 4168532, at *12 (E.D. Cal. Sept. 14, 2021) (citing  E.g., Engquist, 553 U.S. at 601; N. Pacifica LLC, 526 F.3d at 486; Chappell v. Bess, No. 2:01-cv-01979 KJN P, 2012 WL 3276984, at *19 (E.D. Cal. Aug. 9, 2012)).

### 7.  Conspiracy

Conspiracy under § 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights,"  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks omitted) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)), and that an "'actual deprivation of his constitutional rights resulted from the alleged conspiracy,'"  Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) ).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steelworkers, 865 F.2d at 1541).  A plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. Miller v. Cal. Dep't of Soc. Servs., 355 F.3d 1172, 1177 n.3 (9th Cir. 2004) (citing Woodrum, 866 F.2d at 1126).  The mere statement that defendants "conspired" or acted "in retaliation" is not sufficient to state a claim.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic v. Twombly, 550 U.S. 544, 555 127 S.Ct 1955 (2007)).

The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support the existence of the claimed conspiracy."  Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted)

(discussing conspiracy claim under § 1985); <u>Burns v. County of King</u>, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." (citation omitted)).

## IV.    MOTION TO DISMISS UNDER RULES 12(b)(6) AND 8(a)(2)

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); <u>see also</u> <u>Hosp. Bldg. Co. v. Rex Hosp. Trustees</u>, 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. <u>See</u> <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969). In addition, *pro se* pleadings are held to a less stringent standard than those drafted by lawyers. <u>See</u> <u>Haines v. Kerner, 404 U.S. 519</u>, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. <u>See</u> <u>Iqbal</u>, 556 U.S. 662.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." <u>Id.</u> at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see id.; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee, 250 F.3d at 688; and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## V.   DEFENDANTS' MOTION TO DISMISS

Defendants bring this motion to dismiss under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) on the grounds that (1) the First Amended Complaint (FAC) fails to allege sufficient facts to state a claim against any Defendant under 42 U.S.C. § 1983 or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (2) the FAC asserts claims for injunctive relief under RLUIPA but fails to establish that any Defendant is in a position to provide any relief that the Court could order; and (3) asserts a claim for retaliation under the First Amendment against Defendant Moosbauer that fails as a matter of law.

### A.   The First Amended Complaint is Subject to Dismissal Notwithstanding Screening by the Court

Defendants first argue that this motion to dismiss is warranted notwithstanding the Court's already having screened the First Amended Complaint, because the Judges in the Eastern District of California have held that Defendants have a procedural right to bring such a motion.

**B.** **Plaintiff Fails to State any Claim Against Defendants Moosbauer, Anguiano, Chapa, Lucero, Marquez, or Cruz**

    **1.** **Plaintiff Fails to Allege Facts Supporting a First or Eighth Amendment Cause of Action**

        **(a)** **Plaintiff's Generalized Allegations Against Defendants Are Insufficient to State a Cause of Action Against Any Individual Defendant**

Defendants argue that Plaintiff's generalized allegations against this collective group of Defendants are not sufficient to plead a cognizable cause of action against the individual Defendants. In support of their argument, Defendants assert that Plaintiff identifies these Defendants as "culinary staff," refers to them collectively as "CSC" or "culinary workers" without distinction, and refers to "defendants" collectively throughout his complaint. Defendants also assert that for his section 1983 causes of action, he repeats the same generalized allegations, e.g., "Defendants, and each of them, have failed to provide Kosher meals as required by the U.S. constitution [*sic*], existing decisional case law, and Jewish Kosher law," (FAC at 12:6-7), and that Plaintiff's FAC does not make a single mention of any of these defendants in its seven-page "Statement of Facts." (Id. at 5-11).

        **(b)** **Plaintiff's Failure to Allege Intentional Conduct Forecloses These Causes of Action**

Defendants argue that the rare instances in which Plaintiff identifies any of these individuals, taken as true, are insufficient to state a claim for a section 1983 violation. As examples, Defendants assert that the FAC fails to demonstrate that Defendants Moosbauer, Lucero, Marquez, Chapa Anguiano, or Cruz had actual knowledge of issues with the kosher meals, and Plaintiff's generic, conclusory and generalized allegations that "[p]rison officials have been made well aware of the inability of plaintiff to keep kosher: (e.g., FAC at 22) are

insufficient.  Other examples of Plaintiff's insufficient individualized allegations include, inter alia, (against Moosbauer) that he "refused to fix issues, and even claimed to have eatten [*sic*] the rotten meat and instructed [Warzek] to eat it while watching" (FAC at 13:17-22); (against Anguiano) that Anguiano "active[ly] coordinat[ed] with "C/O Paez . . . [who] actively prevented Plaintiff from seeking replacements on a regular basis . . . ." (FAC at 12:25-28); (against Cruz) that "Defendant Cruz refused to send replacements (meals) and allowed for the theft of items inside the Kosher meals" (FAC at 12:17-18); and (against Chapa, Lucero, and Marquez individually) that they were "frontline 'refusers' to replace spoiled and contaminated meals (and meals missing components) that were served to plaintiff" (Id. at 13).

### (c)   Allegations Against Cruz Based on His Supervisory Role are Not Actionable

Defendants assert that the sole individualized allegation by Plaintiff against Cruz is that he "refused to send replacements (meals) and allowed for the theft of items inside the Kosher Meals," (FAC at 12:17-18), but Plaintiff does not allege that Cruz had the authority to provide replacement meals.  Also, Plaintiff's allegation that Cruz "allowed for the theft of items" forecloses any cause of action against Cruz because, as a culinary supervisory cook (id. at 4), he is not liable for the actions of subordinate inmate kitchen staff who allegedly stole those items.

### 2.   The FAC Fails to Establish That These Defendants are Appropriate Subjects of a RLUIPA Claim

Defendants also argue that Plaintiff has not established that defendants Moosbauer, Anguiano, Chapa, Lucero, Marquez, or Cruz are appropriate subjects of a RLUIPA claim, because Plaintiff's only allegation is that "Defendants, and each of them, have played a substantial burden on [his] ability to exercise his faith and follow the tenets of his religion," (FAC at 20), and there is no explanation of their specific positions or responsibilities, let alone any basis for concluding that they could fix the alleged issues with the kosher meals at VSP, as required to obtain injunctive relief against them.

### C.   Plaintiff Fails to State an Eighth Amendment Failure to Protect or First Amendment Retaliation Claim Against Moosbauer

1. **Plaintiff Fails to Allege Facts Supporting an Eighth Amendment Food Safety Claim Against Defendant Moosbauer**

Defendants argue that Plaintiff fails to state a claim against Moosbauer for failure to protect Plaintiff from unsafe food under the Eighth Amendment on the allegation that Moosbauer "instructed [Warzek] to eat [rotten meat] while watching." (FAC at 13:20-22.). Defendants assert that Plaintiff provides no additional detail regarding what led him to believe that the meat was "rotten" and therefore posed a "substantial risk of harm." The FAC does not allege that Moosbauer knew that the meat was "rotten," only that he directed him to eat it, and Defendants argue that this allegation, without more, is insufficient to show that Moosbauer's conduct was "wanton." Defendants also argue that Plaintiff's attempts to distinguish Moosbauer based on his Supervisory Cook position, without more, are insufficient to establish Moosbauer's personal liability for deficiencies in the kosher meals.

2. **The FAC Lacks Specific Factual Allegations Required to State a Claim for Retaliation Against Moosbauer**

Defendants argue that Plaintiff has not established a nexus between Plaintiff's repeated complaints and grievances and Moosbauer's adverse actions, telling his workers that they did not need to wear gloves or hair-nets while working with the kosher foods and giving meals to Moosbauer's favorite workers instead of using them as replacements for spoiled meals, "causing the plaintiff to be forced to either eat spoiled meals or not to eat." (FAC at 15:13-19.) Defendants assert that Plaintiff does not allege that he made any written grievances against Moosbauer or that Moosbauer was even aware of Plaintiff's grievances.

D. **Plaintiff Fails to State any Claim Against Defendant Paez**

Defendants allege that the FAC asserts the same claims against Defendant Paez as it does for Defendants Anguiano, Chapa, Lucero, Marquez, and Cruz: violations of RLUIPA, the First Amendment's Free Exercise Clause and adverse conditions of confinement under the Eighth Amendment, and that the only way in which Paez is distinguished from those defendants is in the FAC's identification of him as a "correctional officer." Plaintiff asserted a retaliation claim against Paez in the FAC, threatening to take adverse actions for Plaintiff's attempts to have

spoiled meals exchanged at the dining hall, but the Court's screening order found this allegation insufficient to state a cause of action for retaliation.  Defendants found that Paez was only mentioned once in the FAC for violation of the First Amendment Free Exercise Clause (FAC at 12:25-28) and Plaintiff failed to demonstrate that Paez was involved in the preparation or service of the kosher food.  Defendants argue that generalized allegations against Paez fail to state a claim against Paez for the same reasons discussed for all of the Defendants, and Defendants also argue that Defendant Paez also is an improper defendant for a RLUIPA claim for the same reasons as Defendants Anguiano, Chapa, Lucero, Marquez, and Cruz: the FAC fails to establish that Defendant Paez could effectively implement any injunctive relief that the Court may order.

### E. Plaintiff Alleges Supervisory Liability Against Defendant Fisher, and Therefore Plaintiff's Claims Against him are not Actionable

Defendants argue that Plaintiff's claims against defendant Fisher, for RLUIPA, retaliation, and adverse conditions of confinement, should all be dismissed because Plaintiff's claims that Defendant Fisher is liable simply because he is a supervisor do not state a claim, and Plaintiff's attempts to make individualized allegations against Fisher fall short.  Plaintiff alleges that defendant Fisher personally reviewed the administrative appeals and made decisions to either deny or ignore problems as they were reported to [him] personally and directly via grievances, but the mere submission of grievances about an issue are insufficient to establish a defendant's knowledge, and a plaintiff cannot hold prison officials liable merely for their involvement in the prison appeals process.  Defendants assert that Plaintiff has not alleged any direct conversations between Plaintiff and Fisher, and there are no other factual allegations demonstrating Fisher's knowledge about any issues with the kosher meals at VSP.

## VI.   DISCUSSION

In opposition to Defendants' motion, Plaintiff first makes new detailed allegations against each of the individual Defendants in opposition to Defendants' argument that he (Plaintiff) fails to state a claim in the FAC against individual Defendants because he addressed the Defendants together collectively as "unspecified defendants."  Plaintiff explains that he was attempting to

expedite the relaying of the facts of the claims.  Plaintiff now brings new allegations that were not included in the First Amended Complaint.

Defendants correctly respond that the Court cannot consider Plaintiff's new allegations in ruling on their motion to dismiss because the allegations were not included in the First Amended Complaint which is at issue.  Defendants then address Plaintiff's new allegations and argue that they do not state a claim, and further amendment of the complaint would be futile.

Plaintiff calls Defendants' argument that the FAC fails to allege sufficient facts "absurd" considering that fifteen people filed the original complaint.  He also opposes Defendants' statement that a "retaliation claim against Defendant Moosbauer fails as a matter of law," arguing that he "believes the elements required for a retaliation claim are divulged."  As for his Eighth Amendment claim, Plaintiff argues that Defendants deprived him of the minimal civilized measure of life's necessities, specifically food and freedom of religion, and acted with deliberate indifference.

Plaintiff acknowledges that more specific information would strengthen his claims against Defendants Chapas, Lucero, Marquez, and Cruz, but states his belief that he has linked Defendants to specific actions or omissions and showed how injunctive relief could apply.  He states that he has provided examples of thousands of deficiencies and defects, and not simply a few vague allegations as argued by Defendants. He opposes Defendants' argument that their conduct as alleged by Plaintiff is only negligence, stating that the conduct happened for weeks, months, and even years, which constitutes deliberate indifference.

Plaintiff also opposes Defendants' arguments that Defendant Cruz did not have the authority or means to get replacements meals; that there is no standing for Defendants' "nit-picking" affirmative defenses; that Plaintiff did not allege that Defendant Moosbauer knew about Plaintiff's grievances; that Plaintiff did not present the elements of retaliation; that Plaintiff's allegations were speculative or conclusory; that Plaintiff failed to show that Defendant Paez is responsible for preventing KDP defect corrections; that Defendant Fisher was not liable because his conduct was supervisory; and that Defendant Fisher was not on notice regarding KDP problems.

### A.      Defendants' right to bring this motion to dismiss

Defendants first establish that they have a procedural right to bring a motion to dismiss challenging the findings in the Court's screening order.  Defendants cite Birrell v. Banzhaf, No. 2:14-CV-01024 JAM DB, 2017 WL 840654, at *5 (E.D. Cal. Mar. 3, 2017), in which this Court found that "[J]udges in the Eastern District of California have repeatedly held that the screening and dismissal procedure under 28 U.S.C. § 1915A is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring."

Plaintiff argues that Defendants' statement that their motion to dismiss is warranted is a false affirmative defense without merit or standing.

The Court agrees with Defendants that they unquestionably do have the right to bring a 12(b)(6) motion challenging the findings in the Court's initial screening order.

### B.      Personal Participation – Defendants Chapas, Lucero, and Marquez

**Defendants' Arguments**:

Essentially, the Defendants argue that Plaintiff fails to state any claims against the above named defendants because Plaintiff has not alleged sufficient facts in the FAC against them. Under § 1983, a Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones, 297 F.3d at 934 (emphasis added).  Plaintiff must demonstrate how each of the defendants, through their own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77.

Defendants argue that in the FAC Plaintiff fails to allege facts showing that defendants Chapas, Lucero, and Marquez, who are all culinary workers at the prison, personally acted against him.  Plaintiff alleges in the FAC that the "problems faced by Plaintiff is [*sic*] and has been caused by Defendant and each of them each and every day."  (FAC at 11.)  Plaintiff identified these three Defendants as "culinary workers," "culinary staff," or CSC without distinction, or referred to them with all Defendants collectively.[3]

**Plaintiff's Response**:

---

[3] Defendants Moosbauer, Cruz, and Anguiano are addressed separately below.

In response to Defendants' arguments, Plaintiff explains that he lumped defendants together because he was attempting to expedite the relaying of the facts of the claims.  Plaintiff acknowledges that more specific information would strengthen his claims against Defendants Chapas, Lucero, and Marquez, but states his belief that he has linked Defendants to specific actions or omissions.

**Court's Conclusion**:

As correctly argued by Defendants, Plaintiff has not alleged facts supporting a cause of action against these three defendants (Chapas, Lucero, or Marquez) because there are no factual allegations showing how each personally acted against him.  Plaintiff cannot state a claim against and individual defendant unless he demonstrates in his allegations how **each** of them individually, identified by **name**, **personally** acted, or failed to act, violating Plaintiff's rights.  Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights.  Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Summarizing, Plaintiff must allege personal acts by each defendant, showing how each individual defendant violated Plaintiff's rights by their separate personal conduct.   Plaintiff has not done so here and therefore fails to state claims against defendants Chapas, Lucero, or Marquez.  Simply stating that Chapas, Marquez and Masquez were frontline refusers to replace spoiled and contaminated meals…and as supervisors allowed inmate workers to knowingly and grossly contaminate the Kosher meals, is insufficient factually to support a finding that Plaintiff has stated a claim.  However, Plaintiff should be granted leave to file a Second Amended Complaint to cure the deficiencies in his claims identified by the Court.  See Stevenson v. Holland, 2017 U.S. Dist. LEXIS 107170, *8, Case No. 1:16-cv-01831-AWI-SKO (E.D.Cal. July 11, 2017) (citing Lopez, 203 F.3d at 1127).

## C.   Official and Individual Capacity

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).  However, the Eleventh Amendment

does not bar suits for money damages against state officials in their personal capacities, Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003); nor does it bar suits against state officials in their official capacity for prospective (injunctive) relief, Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010).  When a plaintiff seeks money damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit for money damages.  Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).  Therefore, the court finds that Plaintiff fails to state a claim for damages against Defendants in their official capacities, but he is not barred by the Eleventh Amendment from seeking injunctive or declaratory relief against Defendants in their official capacities, or for seeking declaratory or injunctive relief against defendants acting within their official capacities under a RLUIPA claim, or from seeking money damages from Defendants in their individual capacities.

**D.   Supervisory Liability**

Plaintiff names Defendants who hold supervisory positions, such as the Warden and supervisory cooks.  Defendants specifically argue that Defendant Cruz, who is alleged to have "allowed for the theft of items inside the Kosher meals," is not liable for the actions of subordinate inmate kitchen staff who allegedly stole those items.

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no *respondeat superior* liability under [§] 1983." Taylor, 880 F.2d at 1045 (citations omitted).

Each Defendant is only liable for his or her own misconduct, and Plaintiff must demonstrate that each Defendant, through his or her own *individual actions*, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77 (emphasis added).  The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal participation or by setting in motion a "series of acts by others which

the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson, 588 F.2d at 743-44.  "'Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'"  Id. (quoting Preschooler II, 479 F.3d at 1183) (citations omitted)).

Therefore, to the extent that Plaintiff seeks to impose liability upon any of the defendants in their supervisory capacity, Plaintiff fails to state a claim.

### E.   Promulgation of Policies -- Defendant Fisher

"When a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights, then the official specifically intends for such violations to occur." OSU Student Alliance v. Ray, 699 F.3d 1053, 1076 (9th Cir. 2012). "For an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same level of intent as would be required if the official were directly to deprive the third party of his constitutional rights." Lacey v. Maricopa Cnty., 693 F.3d 896, 916 (9th Cir. 2012) (en banc).

Plaintiff alleges that Defendant Fisher created policies that denied Plaintiff the ability to eat Kosher foods or even sanitary foods.  Plaintiff alleges that he and others required to eat Kosher by their faith suffer because of these policies.  Plaintiff alleges that Defendant Fisher only allows Plaintiff access to the Rabbi one day a week, and that Defendant Fisher has also disallowed Shabbat (Saturday) services and refuses to accommodate Shabbat work prohibition for Plaintiff.

Here, Plaintiff has not identified a policy created by Defendant Fisher that prevented him from eating Kosher or sanitary foods, nor has Plaintiff alleged any facts demonstrating that a policy was created for that reason, or that caused Plaintiff's rights to practice his religion to be violated.  However, the Court takes judicial notice of 1) CCR 15 sec 3380(a) and 2) VSP's Operational Procedure (OP) 10048.  These two sections will be discussed more fully later in this order where relevant.

### F.        Defendants Paez, Anguiano, and Cruz

Plaintiff alleges that Defendant C/O Paez personally stood at the serving window and actively prevented Plaintiff from seeking replacement foods on a regular basis, using threats and retaliation to quell calls for change in active coordination with culinary staff member Anguiano. Plaintiff also alleges that Defendant Paez, in response to attempts to have spoiled meals exchanged at the dining hall, used threats of Rules Violation Reports, retaliatory searches (that factually occurred), and threats to have Plaintiff removed from KDP.

Plaintiff alleges that Defendant Anguiano accused Plaintiff of fraud when he tried to have spoiled meat replaced, and then required that every Saturday night a meal be opened in front of him (Anguiano). Plaintiff also alleges that when he was served rotten meat, Defendant Anguiano refused to replace it, and that Anguiano likewise took an active role in taking away the ability of Plaintiff to eat suitable food. That he was trained by Defendant Moosbauer to deny requests for replacement meals even when they are rotten, spoiled, spilled, open, contaminated, or otherwise unfit for consumption (or rendered non-Kosher). Defendants Paez and Anguiano acted in concert with one another to deter by force, with threats of retaliation.

Plaintiff alleges that Defendant Cruz refused to send replacement meals and allowed thefts from Kosher meals. Defendant Cruz was allowed by Moosbauer to open and contaminate the meals while stealing the meals' contents (meals served to Plaintiff).

The Court finds that Plaintiff has stated sufficient facts for an Eighth Amendment claim against defendant Cruz for opening and contaminating meals served to Plaintiff while stealing the meals' contents. Plaintiff may be able to state claims against defendants Paez and Anguiano for retaliation and for subjecting Plaintiff to adverse conditions of confinement, but currently Plaintiff's allegations against defendants Paez and Anguiano in the FAC are vague and conclusory. To state claims, Plaintiff must explain what is meant by "accused of fraud," "actively prevented Plaintiff from seeking replacement foods," "used threats and retaliation to quell calls for change," and "acted in active coordination with Defendant Anguiano." To state a claim for retaliation, Plaintiff must satisfy five elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes</u>, 408 F.3d at 567-68. To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. <u>Grenning</u>, 34 F.Supp.3d at 1153.

Therefore, the Court finds that liberally construed, Plaintiff states a claim under the Eighth Amendment against Defendant Cruz for opening, contaminating, and stealing contents from Plaintiff's meals.  However, Plaintiff's allegations against Defendants Anguiano and Paez are vague and conclusory and therefore fail to state any claims.  Plaintiff shall be granted leave to amend the complaint, if he so wishes.  <u>See</u> <u>Stevenson</u>, 2017 U.S. Dist Lexis 107170

### G.   <u>Equal Protection – Fourteenth Amendment Claim</u>

The Equal Protection Clause requires the State to treat all similarly situated people equally. <u>See</u> <u>City of Cleburne</u>, 473 U.S. at 439. This does not mean, however, that all prisoners must receive identical treatment and resources. <u>See</u> <u>Cruz</u>, 405 U.S. at 322 n. 2; <u>Ward</u>, 1 F.3d at 880; <u>Allen</u>, 827 F.2d at 568–69.

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,"' (citing <u>see</u> <u>Thornton</u>, 425 F.3d at 1166) (quoting <u>Lee</u>, 250 F.3d at 686), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, <u>Engquist</u>, 553 U.S. at 601-02; <u>Village of Willowbrook</u>, 528 U.S. at 564; <u>Lazy Y Ranch Ltd.</u>, 546 F.3d at 592; <u>North Pacifica LLC</u>, 526 F.3d at 486.

Plaintiff alleges that Defendant Warden Fisher "has disallowed Shabbat (Saturday) services and refuses to accommodate Shabbat work prohibition for Plaintiff but permits the Muslim holidays to be observed, unlike the Majority of holidays required by Jewish Law. Likewise accommodations are readily made for the Christian services, after the 2nd day of Rabbi access was reduced to 1 day."  (FAC, ECF No. 4 at 20:13-18.)  Plaintiff also alleges that Defendant Raythel Fisher, Jr. created policies that deny KDP such as Plaintiff the ability to eat

Kosher or even sanitary food. Those who are required to eat Kosher by their faith, such as Plaintiff, suffer because of these policies.

Plaintiff further alleges that Culinary staff fail to supervise their workers, and custodial staff refuse to admonish those found to contaminate food and actively conspire with culinary staff (Defendants), to force Plaintiff to accept spoiled/contaminated food.  RVR threats include actions for refusal to obey orders, inciting a riot, hunger strike initiation, and assault on staff. Inmates Anderson and Doe #4 [not defendants] actively hate against the Plaintiff by contaminating the Kosher food (Kosher is inherently a Jewish observation as it was delivered to the Jewish Nation by Moshe/Moses at Mount Sinai) and disrupting Kosher observance. Plaintiff claims discrimination of Jewish prisoners because of the services that are not allowed and lack of accommodation compared to what is allowed for Muslim and Christian prisoners. Plaintiff has sufficiently alleged that defendants Fisher and Moosbauer intentionally discriminated against him because of his membership in a protected class, as required to state § 1983 claim against an officer for violation of equal protection.  Specifically, the court finds that the following allegations are sufficient to state a  fourteenth amendment equal protection claim: that Defendant Fisher disallowed Shabbat (Saturday) services but permitted the Muslim holidays to be observed unlike the Majority of holidays required by Jewish Law, and made accommodations for Christian services; that Defendant Moosbauer, a culinary staff supervisor, told his workers they did not need to wear gloves or hair-nets while working with Kosher foods and told a Jewish worker to "get into the oven" while it was still hot and openly stated that his grandfather was a German SS, wishing that all the Jews had been killed in the Holocaust.

Thus, the Court finds that Plaintiff has stated a claim for violation of the Equal Protection Clause against Defendants Fisher and Moosbauer.

### H.    Verbal Harassment and Threats

Plaintiff alleges that Defendant Paez used verbal threats to quell calls for change.  Verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

## I.    <u>Appeals Process – Due Process – Fourteenth Amendment</u>

Due process liberty interests created by prison regulations will be generally limited to freedom from restraint which, while not exceeding sentence in such unexpected manner as to give rise to protection by due process clause of its own force, nonetheless imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life.  <u>Sandin</u>, 515 U.S. 472.

Plaintiff alleges that he has suffered significant hardships at VSP such as daily hunger with nutritional deficiency; having to collect data, file grievances, and file this lawsuit; suffering from retaliatory searches and threats of violence; financial burden from purchasing additional food to supplement diet; stress, anxiety, and depression.  Plaintiff also alleges that Defendant Fisher "personally reviewed prison administrative appeals and made intentional decisions to either deny or ignore the problems as they were reported to them personally and directly via grievances." (FAC, ECF No. 4 at 12:18-20.)  However, none of these hardships entitle Plaintiff to a liberty interest in a specific prison grievance procedure.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." <u>Ramirez</u>, 334 F.3d at 860 (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing <u>Mann</u>, 855 F.2d at 640.  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." <u>Azeez</u>, 568 F. Supp. at 10 <u>accord</u> <u>Buckley</u>, 997 F.2d at 495; <u>see also</u> <u>Massey</u>, 259 F.3d at 647 (existence of grievance procedure confers no liberty interest on prisoner).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." <u>Azeez</u>, 568 F. Supp. at 10; <u>Spencer</u>, 638 F. Supp. at 316.

Actions in reviewing prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action.  <u>Buckley</u>, 997 F.2d at 495.  The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct.  "Only persons who cause or participate in the violations are responsible.  Ruling against a prisoner on an administrative complaint does not cause or contribute to the

violation."  Greeno, 414 F.3d at 656-57 accord George, 507 F.3d at 609-10; Reed, 178 F.3d at 851-52; Vance, 97 F.3d at 992-93.; Haney, 2017 WL 698318, at *4–5.

Therefore, the burden of filing prison grievances, or of Defendant Fisher's participation in the prison appeals process, without more, cannot serve as the basis for liability in a section 1983 action.

**J.    Conspiracy**

Conspiracy under § 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights,"  Franklin, 312 F.3d at 441 (internal quotation marks omitted) (quoting United Steelworkers of Am., 865 F.2d at 1540-41), and that an "'actual deprivation of his constitutional rights resulted from the alleged conspiracy,'"  Hart, 450 F.3d at 1071 (quoting Woodrum, 866 F.2d at 1126).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steelworkers, 865 F.2d at 1541).

Here, Plaintiff has not alleged facts with sufficient particularity to show an agreement or a meeting of the minds to violate Plaintiff's constitutional rights. The mere statement that "[s]everal of the actions . . . were done in concert with other actors (Defendants) that were not directly present at that time, but in conspiracy to retaliate" is not sufficient to state a conspiracy claim.  (ECF No. 4 at 14:9-11.)  Nor has Plaintiff stated specific facts to support the existence of the claimed conspiracy.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

Therefore, the Court finds that Plaintiff fails to state a conspiracy claim against any of the Defendants.  Plaintiff however will be allowed an opportunity to amend.

**K.    RLUIPA & First Amendment Free Exercise  (all Defendants)**

With the exception of defendants Fisher and Moosbauer, the Court finds, for the reasons discussed above, that Plaintiff fails to state a claim in the FAC against Defendants Anguiano, Chapas, Lucero, Marquez, Cruz and officer Paez under both RLUIPA and the First Amendment Free Exercise of Religion Clause.  Plaintiff has not alleged sufficient facts demonstrating what,

when and how exactly each of these defendants, individually and personally acted to violate Plaintiff's RLUIPA or the First Amendment Free Exercise rights.   For instance, claiming that defendant Paez personally stood at the serving window and actively prevented Plaintiff from seeking replacement foods on a regular basis, or in response to attempts to have spoiled meals exchanged at the dining hall, used threats of rules violation reports;   that Chapas, Lucero, Marquez and Angiano were the frontline refusers to replace spoiled and contaminated meals; that Cruz refused to send replacements (meals) and allowed the theft of items inside the Kosher meals, and would open and contaminate meals while stealing the meals contents; that Paez, in response to attempts to have spoiled meals exchanged at the dining hall, used threats of rules violation reports;   that Anguiano accused Plaintiff and other KDP inmates of fraud, requiring that every Saturday night meal be opened in front of him, and refused to replace meat; are all too conclusory and bereft of specific  facts to state a claim under both RLUIPA and First Amendment Free Exercise.

To repeat, in regard to a claim under RLUIPA, RLUIPA does not contemplate liability of government employees in their individual capacity.  <u>Wood</u>, 753 F.3d at 904. Thus Plaintiff may not state a RLUIPA claim for damages against any of the Defendants in their individual capacities.  Moreover, money damages are not available under RLUIPA against the state or state officials sued in their official capacities, <u>Sossamon</u>, 563 U.S. at 279, a RLUIPA claim may proceed only for declaratory or injunctive relief against defendants acting within their official capacities.

With this limitation in mind, the Court finds, as set forth below,  that Plaintiff only states cognizable claims under RLUIPA and First Amendment Free Exercise against Warden Fisher and culinary staff supervisor Moosbauer.

Initially, it is important to note that in Plaintiff's FAC he requests as part of his relief, "Injunctive Relief, For Policy and Procedure Repair and Kosher Meal Repair."  (ECF No. 4 at 26:11.)

In regard to Warden Fisher, the following are applicable to the court's finding: (1) CCR 15 sec 3380(a), which states in pertinent part, "The warden. . . . of an institution of the department

is the chief executive officer of that institution, and is responsible for the custody, treatment, training and discipline of all inmates under his or her charge;" 2) Operational Procedure (OP) 10048 states, "The purpose and objective of this Operational Procedure (OP) is to establish guidelines to supply authorized inmates with a wholesome, nutritious, and adequate Kosher Diet."[4]

Therefore, pursuant to CCR 15 sec 3380(a), as a warden it was defendant Fisher's responsibility to ensure that the OP policy was being properly and faithfully adhered to.  These two provisions are more than sufficient to allege a causal connection between Plaintiff's alleged injury and defendant Fisher. (See, Henderson v Ayers, 476 F.Supp 2d 1168 (C.D.Cal. 2007), 2007 U.S. Dist. LEXIS 18791).

Defendant Moosbauer, as a supervisor in the culinary unit, appears to have responsibility, due to his position,  under Valley State Prison's Operational Procedure (OP) 10048 § IV E, which states the following duties of a correctional supervising cook: "The Correctional Supervising Cooks (CSC) are directly responsible for the proper preparation, quality and quantity of kosher meals and the service of the meals…."  If so, this makes clear defendant Moosbauer's responsibility to protect Plaintiff.  The Court takes judicial notice of OP 10048 § IV E and finds the following allegations found in Plaintiff's FAC relating to defendant Moosbauer to be sufficient to allege a cognizable claim under both RLUIPA and the First Amendment: 1) "Rotten, spoiled, and otherwise unfit for human consumption food is being served in the Kosher diets;" 2) "Moosbauer in particular refused to fix issues, and even claimed to have eatten [*sic*] the rotten meat and instructed Gann to eat it while watching;" 3) In retaliation for repeated complaints and grievances, defendant Moosbauer, (a vocally Proud Neo-Nazi) told his workers that they no longer needed to wear gloves or hair-nets while working with the kosher food;" 4) "In addition, the meals that should have been used as replacements for spoiled meals were given to his (Moosbauer's) favorite workers instead of being used as replacements causing the plaintiff to be

---

[4] The Court takes judicial notice of CCR 15 sec. 3380(a) and Valley State Prison's Operational Procedure 10048 for the prison's Kosher Diet Program, signed by Warden Fisher.  (See Exhibit A attached to the Third Amended Complaint in case 1:20-cv-0023-ADA-GSA-PC (E.D.Cal. 2020); Reyes v. Valley State Prison, ECF No. 16 at 19-26.

forced to either eat spoiled meals or not to eat;" and 5) As a culinary supervisor defendant Moosbauer would (likely) be responsible to oversee the actions of members of the culinary staff whose actions are alleged to have involved the following -- "Kosher meals contained food that was rotten, spoiled, and otherwise unfit for human consumption;" "the Shabbat dinner is served with spoiled meat;" "[t]he internal components of the meals are open, spoiled, and otherwise contaminated;" "[t]he meat is supposed to be vacuum sealed but is served to Plaintiff open and with mold growing on it;" "[i]tems in the Kosher meals are stolen by inmate culinary workers;" and Kosher "meals are cooked in ovens used to cook non-Kosher food, even at the same time, rendering the food non-Kosher."

With respect to this last item, number 5) above (Moosbauer), although supervisory government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*, they may be individually liable under section 1983 if there is a causal connection between the supervisor's wrongful conduct and the constitutional violation. See Pauley v. California, 2018 US Dist Lexis 193388. This can be shown by demonstrating that a supervisor's own culpable action in the control of his subordinates was a cause of Plaintiff's injury. Id. Defendant Moosbauer's responsibility to protect Plaintiff is clear under Valley State Prison's Operational Procedure (OP) 10048 § IV E, described above, which states the duties of the correctional supervising cooks.

In summary, money damages are not available under RLUIPA against the state or state officials sued in their official capacities, Sossamon, 563 U.S. at 279, and RLUIPA does not contemplate liability of government employees in their individual capacity. Wood, 753 F.3d at 904. To repeat, Plaintiff may not proceed with a RLUIPA claim against individual defendants for money damages, but he is not precluded from proceeding against them in their official capacities for injunctive relief. An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." Hartmann v. CDCR, 707 F.3d 1114 (9th Cir. 2013) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 n. 55 (1978), see Hafer, 502 U.S. 21.)) "Suits against state officials in their official capacity therefore should be treated as suits against

47

the State." <u>Id.</u> (citing <u>Hafer</u>, 502 U.S. at 25).  A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. <u>See id.</u>; <u>Graham</u>, 473 U.S. at 166, 105 S.Ct. 3099.  Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief.  <u>See</u> <u>L.A. Cnty. v. Humphries</u>, 562 U.S. 29, 131 S.Ct. 447, 452, 454, 178 L.Ed.2d 460 (2010); <u>Hafer</u>, 502 U.S. at 25, 112 S.Ct. 358.

Defendants argue that the FAC requests injunctive relief under RLUIPA but fails to establish that any Defendant is in a position to provide any injunctive relief the Court could order. The Court concurs that Plaintiff's request for injunctive relief should only be granted against those who can appropriately respond to the request. Specifically, as this relates to a RLUIPA claim, the proper defendant "is the official who could appropriately respond to a court order on injunctive relief should one ever be issued."  <u>See</u> <u>Uhuru v. Eldridge</u>, 2020 US Dist Lexis 52057 at * 10 (2020) (citing <u>see</u> <u>Jones</u>, 791 F.3d at 1031).  Hence Plaintiff's requests for injunctive relief likely only apply to Fisher & Moosbauer.

Based on the foregoing, Plaintiff fails to state a RLUIPA or First Amendment Free Exercise claim in the First Amended Complaint against Defendants Anguiano, Chapas, Lucero, Marquez, Cruz and Paez.  However, Plaintiff does state a claim here as to defendants Warden Fisher and culinary staff supervisor Moosbauer.  Plaintiff should be granted leave to file a Second Amended Complaint if he so wishes.  <u>See</u> <u>Stevenson</u>, 2017 U.S. Dist Lexis 107170.

### L.    <u>Defendant Moosbauer -- Retaliation</u>

Plaintiff brings a claim against Defendant Moosbauer for retaliation in violation of the First Amendment.  Defendants move to dismiss Plaintiff's retaliation claim on the grounds that Plaintiff has not alleged that he filed any written grievances directed at Defendant Moosbauer, that Moosbauer was even aware that Plaintiff submitted written grievances, or that there is a nexus between Plaintiff's conduct and Moosbauer's alleged retaliation.

Defendants' argue that Plaintiff has not shown that he filed any *written* grievances directed at Defendant Moosbauer.  However, courts in the Ninth Circuit have held that informal

and verbal complaints to a supervisor are protected activities under the First Amendment.  Entler v. Gregoire, 872 F.3d 1031 (9th Cir. Oct. 6, 2017);" Halloum v. Ryan, 2014 WL 1047144, *5 (D. Ariz. 2014).  ("[A] number of courts have concluded that verbal statements made by an inmate that essentially constitute a grievance, or that indicate an intent to file a formal written grievance, are protected by the First Amendment.") Loftis v. Montes, No. 218CV4769JFWGJS, 2020 WL 1290842, at *3–4 (C.D. Cal. Feb. 11, 2020), report and recommendation adopted, No. 218CV4769JFWGJS, 2020 WL 1289170 (C.D. Cal. Mar. 18, 2020). Courts have found protected activity where an informal complaint was submitted as a verbal complaint to a superior.  See Gathrite v. Wilson, No. 3:19-cv-01852-JAH-NLS, 2020 WL 4201668 (S.D. Cal. July 22, 2020); see also Ahmed v. Ringler, No. 2:13-CV-1050 MCE DAD, 2015 WL 502855, at *4 (E.D. Cal. Feb. 5, 2015) (finding inmate's verbal complaints about improper search of cell and seizure of his property to superior constituted protected conduct); see also Hackworth v. Torres, No. 1:06-cv-773 RC, 2011 WL 1811035, at *1 (E.D. Cal. May 12, 2011) (rejecting defendant's argument that prisoner's verbal objections to a prison policy during housing classification committee meeting with prison staff was not protected by the First Amendment because the inmate had not filed a written grievance); see also Leslie v. Claborne, 1:19-cv-00366-NONE-GSA-PC, 2021 WL 4523720, at *4 (E.D. Cal. Oct. 4, 2021) (finding plaintiff's reporting of officer misconduct to a captain was protected); see also Uribe v. McKesson, No. 08-cv-1285 DMS (NLS), 2011 WL 9640, at *12 (prisoner's attempt to report a prison official's misconduct, either "verbally or in writing, constitutes speech or conduct entitled to First Amendment protection.").

The Court finds that Plaintiff states a retaliation claim against Defendant Moosbauer. Plaintiff alleges in the FAC that "in retaliation for repeated complaints and grievances, defendant Moosbauer told his workers that they no longer needed to wear gloves or hair nets while working with the Kosher food," and "Moosbauer uses his position to intentionally disrupt the Kosher Diet Program by having the meals served to P go rotten out in the elements, allowing his workers to open and contaminate the meals."  This is sufficient to state a retaliation claim.

**M.**      **Failure to Protect – Defendants Fisher and Moosbauer**

As discussed above, the Eighth Amendment requires prisoners to be provided with nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it. To be liable for failure to protect a prisoner from a risk of serious harm, a defendant must know about the risk and deliberately disregard it. In addition, the defendant must be someone who has the authority and responsibility to protect the prisoner.

Here, the court finds that Plaintiff states cognizable claims against Defendants Fisher and Moosbauer for their failure to protect Plaintiff from a risk of serious harm from unsanitary Kosher foods. Both defendants are supervisors with the authority and responsibility to protect Plaintiff.

As discussed above regarding Warden Fisher's culpability for violations of RLUIPA and the First Amendment Free Exercise Clause: 1) CCR 15 sec 3380(a) states in pertinent part, "The warden . . . of an institution of the department is the chief executive officer of that institution, and is responsible for the custody, treatment, training and discipline of all inmates under his or her charge"; and, 2) Operational Procedure (OP) 10048 states, "The purpose and objective of this Operational Procedure (OP) is to establish guidelines to supply authorized inmates with a wholesome, nutritious, and adequate Kosher Diet…" The Court has taken judicial notice of Valley State Prison's Operational Procedure 10048, found as Exhibit A attached to the Third Amended Complaint in case 1:20-cv-0027-ADA-GSA-PC; <u>Reyes v. Valley State Prison</u>, Doc. 16 at 19-26 (E.D.Cal. 2020). (See footnote 5 above.) The OP was signed by Warden Fisher, seemingly making Defendant Fisher culpable for a failure to oversee culinary staff who allegedly provided unsanitary Kosher foods to Plaintiff.

The same is also true for Defendant Moosbauer who, as a supervisor, appears responsible to oversee the actions of members of the culinary staff alleged by Plaintiff to be involved in the following-- "Kosher meals contained food that was rotten, spoiled, and otherwise unfit for human consumption;" "Shabbat dinner is served with spoiled meat;" "the internal components of the meals are opened, spoiled, and otherwise contaminated;" and "the meat is supposed to remain vacuum sealed, but it is served to the plaintiff open and with mold growing on it." Importantly, Operational Procedure 10048, Sec IV. E states, "The Correctional Supervising Cooks (CSC) are

directly responsible for the proper preparation, quality and quantity of kosher meals and the service of the meals….".   This seemingly makes clear defendant Moosbauer's responsibility to protect Plaintiff.

Therefore, the Court finds that Plaintiff states claims against Defendants Fisher and Moosbauer for failure to protect Plaintiff from risk of harm from unsanitary foods, in violation of the Eighth Amendment.

### N.   **Conditions of Confinement (all Defendants)**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan, 465 F.3d at 1045. Extreme deprivations are required to make out a conditions of confinement claim. Hudson, 503 U.S. at 9. A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi, 391 F.3d at 1057 (quoting Hallett, 296 F.3d at 744 (citation omitted)). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Frost, 152 F.3d at 1128. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731. "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

A prisoner's conditions of confinement claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi, 391 F.3d at 1057 (quoting Hallett, 296 F.3d at 744 (citation omitted)). Extreme deprivations are required to make out a conditions of confinement claim. Hudson, 503 U.S. at 9 (citations and quotations omitted).   The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731.

"[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

Plaintiff alleges that he became ill and vomited when he ate meat that was supposed to be vacuum sealed but was served to him open and with mold growing on it.  Plaintiff also alleges that sharp and relatively large bone shards in turkey served in Kosher lunches caused damage to Plaintiff's teeth and lacerations in Plaintiff's mouth and throat.

If however, Kosher foods dangerous to Plaintiff's health were only rarely served to Plaintiff, without Defendants' knowledge, Plaintiff's allegations in the FAC would not rise to the level of an Eighth Amendment claim.  But here, Plaintiff alleges that he was "continuously deprived of nutritional food for two years," which is not a short time.  (FAC, ECF No. 4 at 16:8-10.)

### 1.     Defendants Fisher and Moosbauer

As previously stated above, the Court takes judicial notice of both (1) CCR 15 sec 3380(a), and, 2) VSP's Operational Procedure (OP) 10048.  OP 10048, was signed by Warden Fisher, and can be found as Exhibit A attached to the Third Amended Complaint in case 1:20-cv-0023-ADA-GSA-PC; Reyes v. Valley State Prison, ECF No. 16 at 19-26 (E.D.Cal. 2020).

Likewise, Defendant Moosbauer appears responsible to oversee the actions of members of the culinary staff pursuant to  Operational Procedure 10048, Sec IV. E.  If applicable to Moosbauer,  makes clear defendant Moosbauer's responsibility to protect Plaintiff.

The state is obligated to provide "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it,'" and "the state health code, while not establishing 'constitutional minima,' is relevant in making a finding regarding the constitutionality of existing conditions." Jackson, 2009 WL 1743639, at *8 (citing Somers, 109 F.3d at 623); also see Foster, 554 F.3d at 812-813; Toussaint, 801 F.2d at 1107 (prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety").

Based on CCR 15 sec 3380(a), together with VSP's Operational Procedure (OP) 10048 and 10048, Sec IV.E, the Court finds that under Plaintiff's allegations, Defendants Fisher and

Moosbauer failed to provide nutritiously adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.  Accordingly, the Court finds that Plaintiff states a claim against Defendants Fisher and Moosbauer for subjecting Plaintiff to adverse conditions of confinement in violation of the Eighth Amendment.

### 2.   Other Defendants

As discussed above in this order, Plaintiff also states a conditions of confinement claim against Defendant Cruz.  However, Plaintiff fails to state a conditions of confinement claim in the FAC against any Defendants other than Defendants Fisher, Moosbauer, and Cruz for the reasons stated above.

Again, Plaintiff should be granted leave to file a Second Amended Complaint, to cure the deficiencies in this claim. (See Stevenson, 2017 U.S. Dist Lexis 107170.

### O.   State Law Claims – CCR Title 15, CCR Title 3, and CCC § 52.1

Plaintiff claims in the FAC that Defendants have violated these California Regulations under Title 15, and Title 3 of the California Code of Regulations (CCR):  CCR 15 § 3054(a)(b); CCR 15 § 3054.2 (d-f)(g[1]); CCR 15 § 3050(a); CCR 15 § 3052(a)(e); CCR Title 3, Div. 2, Sub. 1, Article 2 § 901.1; CCR Title 3, Div. 2, Chapter 4, Sub. 2, Article 45 §1180.43(b); and CCR Title 3, Div. 2, Chapter 4, Sub. 2, Article 45 §1180.43(b)(2)(D).  These are state law claims.

There is no private right of action under Title 15.  Israel v. Carter, No. 221CV1267JAMKJNP, 2022 WL 874941, at *4 (E.D. Cal. Mar. 24, 2022), report and recommendation adopted, No. 221CV1267JAMKJNP, 2022 WL 2954379 (E.D. Cal. July 26, 2022) (citing see e.g., Davis v. Powell, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012) ("There is no implied private right of action under title fifteen of the California Code of Regulations"); Hill v. White, 2014 WL 711016, at *5 (E.D. Cal. 2014) (Title 15 of the California Code of Regulations does not provide a private right of action). Accordingly, Plaintiff's claims for relief under Title 15 should be dismissed with prejudice for failing to state a potentially colorable claim for relief.

Similarly, no independent cause of action exists for actions pursuant to Title 3 of the California Code of Regulations. <u>Shead v. Vong</u>, No. 1:09CV00006OWWSMSPC, 2009 WL 938192, at *5 (E.D. Cal. Apr. 6, 2009) (citing <u>see</u> <u>Davis v. Kissinger</u>, 2009 WL 256574, n. 4 (E.D.Cal. February 3, 2009), *report & recommendation adopted,* 2009WL647350 (E.D.Cal. March 10, 2009). Therefore, Plaintiff's claims for relief under Title 3 should also be dismissed with prejudice.

Plaintiff also claims that Defendants violated California Civil Code (CCC) §52.1, commonly known as the Tom Bane Civil Rights Act (Bane Act). California's Bane Act creates a private cause of action against individuals who interfere "by threat, intimidation, or coercion, or attempt[ ] to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of [California]." <u>Gifford v. Hornbrook Fire Prot. Dist.</u>, No. 2:16-CV-0596-JAM-DMC, 2021 WL 4168532, at *28 (E.D. Cal. Sept. 14, 2021) (citing Cal. Civ. Code § 52.1(b)–(c)). Plaintiffs bringing claims under the Bane Act must show two things: (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was done through threats, intimidation, or coercion. <u>Id.</u> (citing <u>Scalia v. County of Kern</u>, 308 F. Supp. 3d 1064, 1080 (E.D. Cal. 2018); <u>Allen v. City of Sacramento</u>, 234 Cal. App. 4th 41, 67 (Cal. Ct. App. 2015)). The thrust of a claim is that a defendant, by improper means (i.e., threats, intimidation, or coercion), attempted or did prevent a plaintiff from doing something the plaintiff had the legal right to do or to coerce the plaintiff to do something they were not required to do under the law. <u>Id.</u> (citing <u>Scalia</u>, 308 F. Supp. 3d at 1079; <u>Austin B. v. Escondido Union Sch. Dist.</u>, 149 Cal. App. 4th 860, 883 (Cal. Ct. App. 2007)).

The threat, intimidation, or coercion required of a Bane Act claim need not be independent of the alleged constitutional violation. <u>Id.</u> (citing <u>Reese v. County of Sacramento</u>, 888 F.3d 1030, 1043 (9th Cir. 2018); <u>Scalia</u>, 308 F. Supp. 3d at 1080–84; <u>Cornell v. City & Cty. of San Francisco</u>, 17 Cal. App. 5th 766, 799–800 (Cal. Ct. App. 2017)). However, speech alone does not satisfy the threat, intimidation, or coercion requirement unless the speech threatened

violence.  Id. (citing Cal. Civ. Code § 52.1(k); Ctr. for Bio-Ethical Reform, Inc. v. Irvine Co., LLC, 37 Cal. App. 5th 97, 115 (Cal. Ct. App. 2019)).  "[I]n excessive force cases, including Eighth Amendment cases, § 52.1 does not require proof of coercion beyond that inherent in the underlying violation." Rose v. Yuba Cnty., No. 221CV0338TLNACP, 2022 WL 1215265, at *4 (E.D. Cal. Apr. 25, 2022) (citing Rodriguez v. County of Los Angeles, 891 F.3d 776, 802 (9th Cir. 2018)).

Here, Plaintiff alleges that he has been threatened with issuance of Rules Violation Reports, with violence and intimidation, with retaliation, and to be removed from the KDP. However, Plaintiff's vague and conclusory language is not sufficient to state a claim under the Bane Act against any of the Defendants.  Plaintiff may be able to state a claim if he is able to allege that a particular named Defendant personally made threats against him or intimidated him, intentionally interfering with his civil rights.

Significantly however with regard to this claim, Plaintiff must plead the claim presentation requirement contained in California Government Code § 900 et seq.

California's Government Claims Act establishes certain conditions precedent to the filing of a lawsuit against a public entity.  State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1237, 90 P.3d 116, 118 (2004).  "[A] plaintiff must timely file a claim for money or damages with the public entity, (§ 911.2.), and the failure to do so bars the plaintiff from bringing suit against that entity, (§ 945.4.)." Id.  Compliance with the claim presentation requirement is an element of the cause of action, Bodde, 32 Cal.4th at 1240, and is required, Mangold v. California Public Utilities Com'n, 67 F.3d 1470, 1477 (9th Cir. 1995), and "failure to file a claim is fatal to a cause of action," Hacienda La Puente Unified School Dist. Of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992); City of Stockton v. Superior Court, 42 Cal.4th 730, 738 (Cal. 2007) at 738; Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007). The government claim must be filed or presented to the public entity no later than six months after the cause of action accrues. California Government Code § 911.2.  A plaintiff "must allege facts demonstrating or excusing compliance with the claim presentation requirement." Robinson v. Alameda Cty., 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) (quoting Bodde, 32 Cal.4th at 1243; Mangold, 67 F.3d at 1477

(quoting <u>Snipes v. City of Bakersfield</u>, 145 Cal.App.3d 861, 865, 193 Cal.Rptr. 760 (1983) ("Where compliance with the [CGCA] is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general demurrer.")); <u>D.K. ex rel. G.M. v. Solano County Office of Education</u>, 667 F.Supp.2d 1184, 1195 (E.D. Cal. 2009); <u>Karim–Panahi v. Los Angeles Police Department</u>, 839 F.2d 621, 627 (9th Cir. 1988); <u>Flanagan v. Benicia Unified School District</u>, 2008 WL 435355 (E.D .Cal. Feb. 14, 2008)).

"[A] bare allegation that the [CGCA] has been  followed would seem to be a mere conclusion that is insufficient under <u>Iqbal</u> and <u>Twombly</u> . . ."  <u>Young v. City of Visalia</u>, 687 F.Supp.2d 1141, 1152 (E.D. Cal. 2009).  Plaintiff states that he filed under the CTCA, "filed this complaint in compliance with CTCA, and [was] instructed to file this complaint by the Government Claims Board."  (ECF No. 20 at 23:6-8.) This statement is insufficient to show compliance. <u>See</u> <u>Cardenas v. Cty. of Tehama</u>, No. 218CV03021TLNDMC, 2020 WL 4475188, at *10 (E.D. Cal. Aug. 4, 2020) (While the Complaint here states "Plaintiffs filed timely administrative 'tort' claims against County of Tehama, City of Corning, and State of California officials pursuant to Cal. Gov. Code §§ 910 et seq., and hereby timely files this lawsuit within six months of defendants' rejections of those claims," this statement is a mere legal conclusion.)

In the present case, Plaintiff has not provided his state claim as an attachment to the complaint, nor has he alleged what specific facts and causes of action were referred to in the claim. Without such information, Plaintiff has not sufficiently pleaded facts demonstrating that he complied with the Government Claims Act in bringing his state law claims.[5]  Plaintiff shall be granted leave to amend the complaint to state a cognizable claim, if he so wishes.  <u>See</u> <u>Stevenson</u>, 2017 U.S. Dist Lexis 107170.

---

[5] On June 9, 2022, Plaintiff filed a motion for the Court to accept his Government Claim Form, in support of his state law claims.  (ECF No. 30.)  As an exhibit to his motion, Plaintiff submitted a copy of a State of California Government Claim form signed by Plaintiff on December 18, 2019.  (ECF No. 30 at 2-3.)  Submission of the form in this manner is not sufficient to comply with the Government Claims Act.  Evidence that Plaintiff complied with the claim requirement must be submitted with Plaintiff's complaint.  If Plaintiff files an amended complaint in this action, he should attach the claim form to the amended complaint and demonstrate in the amended complaint that he complied with the requirements of the Government Claims Act in bringing his state law claim.

## VII.    CONCLUSION and RECOMMENDATIONS

Based on the foregoing, the Court finds that Plaintiff states claims in the First Amended Complaint against Defendants Fisher and Moosbauer for violation of RLUIPA, violation of the First Amendment Free Exercise Clause, Failure to Protect Plaintiff in violation of the Eighth Amendment, for subjecting Plaintiff to adverse conditions of confinement, and for violation of Equal Protection.  In addition, the Court finds that Plaintiff states a claim against Defendant Cruz for subjecting Plaintiff to adverse conditions of confinement under the Eighth Amendment; and against Defendant Moosbauer for retaliation in violation of the First Amendment; but no other claims against any of the Defendants upon which relief may be granted.

///

Plaintiff should be required to **either**:

(1)    Notify the Court that he wishes to proceed only with his claims against Defendants Fisher and Moosbauer for violation of RLUIPA, violations of the First Amendment Free Exercise Clause, Failure to Protect Plaintiff in violation of the Eighth Amendment, subjecting Plaintiff to adverse conditions of confinement under the Eighth Amendment, and violation of equal protection; against Defendant Cruz for adverse conditions of confinement under the Eighth Amendment; and against Defendant Moosbauer for retaliation under the First Amendment; and dismiss all other claims and defendants,

**or**

(2)    File a Second Amended Complaint.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Rule 12(b)(6) motion to dismiss, filed on November 12, 2021, be granted in part, with leave to amend;

2.    Plaintiff's claims for violation of California regulations under CCR Title 15 and CCR Title 3 be dismissed with prejudice;

3.    Plaintiff's claims against Defendants Fisher and Moosbauer be found cognizable for (1) violation of RLUIPA, (2) violation of the First Amendment Free Exercise

Clause, (3) subjecting Plaintiff to adverse conditions of confinement in violation of the Eighth Amendment; (4) for Failure to Protect Plaintiff in violation of the Eighth Amendment, and (5) violation of equal protection;

4.    Plaintiff's claim against Defendant Cruz be found cognizable for subjecting Plaintiff to adverse conditions of confinement in violation of the Eighth Amendment;

5.    Plaintiff's claim against Defendant Moosbauer be found cognizable for retaliation in violation of the First Amendment;

6.    All other claims in the First Amended Complaint be dismissed for Plaintiff's failure to state a claim, with leave to amend;

7.    Plaintiff  be required to **either**:

(1)    Notify the Court that he wishes to proceed only with his RLUIPA, First Amendment Free Exercise, Failure to Protect, conditions of confinement claims, and violation of equal protection against Defendants Fisher and Moosbauer; retaliation claim against Defendant Moosbauer; and conditions of confinement claim against Defendant Cruz; and dismiss all other claims and defendants;

**or**

(2)    file a Second Amended Complaint; and

8.    This case be referred back to the Magistrate Judge for all further proceedings.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 15, 2022**                    **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE